**Mayda LOPEZ–SOTO, et al., Plaintiffs,**

v.

**Jose HAWAYEK, et al., Defendants.**

**Civ. No. 94–1808(SEC).**

United States District Court,
D. Puerto Rico.

Aug. 6, 1998.

Guillermo J. Ramos–Luina, Hato Rey, PR, Harry Anduze–Montano, San Juan, PR, for Mayda Lopez–Soto, Raul Mariani–Franco, Conjugal Partnership Mariana-Lopez.

Luis F. Montijo, Hato Rey, PR, for Alfred Colon, Jose Hawayek, Maria Isabel Carrera, Grisella Trilla, Jose Raul Alvarez, Doris Toro, Adrian Colon, Olimpia Garcia.

Jose A. Rivera–Cordero, Hato Rey, PR, for Sociedad Espanola Auxilio Mutuo & Beneficiencia, Hospital Auxilio Mutuo, Evanstone Insurance Company.

Angel R. De–Corral–Julia, De Corral & De Mier, San Juan, PR, for Francisco Martin Garrido.

Pedro J. Cordova–Pelegrina, San Juan, PR, for Eloy Ruiz–Pagan, Sindicato De Aseguradores De Impericia Medico Hospitalaria.

## ORDER

CASELLAS, District Judge.

This case is before the Court on plaintiffs' motion for rehearing, additional findings of facts and/or amendment of judgment (**Dockets # 97, 102**), which was duly opposed (**Docket # 107**). Plaintiffs essentially request that the Court make additional findings of fact and/or hold a hearing on the jurisdictional question of whether the Emergency Medical Treatment and Active Labor Act ("EMTALA") should apply to the instant case. It is their contention that even under the Court's interpretation of the law, plaintiffs' proposed additional findings of fact would lead to the inevitable conclusion that the relevant EMTALA provisions are indeed, applicable.

A hearing on this matter was held on Thursday, July 30, 1998, at 9:00 a.m. Both parties presented their particular proposed findings of fact and summarized their respective theories of the case. Upon carefully analyzing the relevant facts, the applicable law, and the arguments advanced by both parties, the Court finds that plaintiffs' motion for additional findings of fact should be **GRANTED.** Such findings do not, however, lead us to alter our ultimate conclusion that the pertinent provisions of EMTALA are inapplicable to the instant case. Thus, our judgment of January 7, 1998 will stand as our **final judgment,** as amended by the addition-

al findings of fact which we incorporate herein.

## Additional Findings of Fact

On Friday, June 11, 1993, plaintiff Mayda López Soto visited the offices of Dr. José Hawayek, her treating physician, complaining of labor pains. Upon examining her, Dr. Hawayek explained to her that even though she felt pain, she was not yet in labor, since the cervix exam still yielded the same results as the exam he had previously conducted earlier that week. *See* Docket # 107, Exhibit 2. Thus, Dr. Hawayek advised her to wait until Monday, and told her that if on Monday she still had not had the child, he would try to induce labor. *Id.* Dr. Hawayek further instructed López–Soto to go straight to the Auxilio Mutuo Hospital if she began to experience labor pains, and assured her that he would be on call. *Id.*

Later that night, López–Soto began to experience more labor pains. Thus, pursuant to her doctor's instructions, she and her husband went directly to the Auxilio Mutuo Hospital. By the time they arrived at the hospital, it was close to midnight. They entered through the Emergency Room door, because at that time, no other entrances to the hospital were open to the public. Docket # 107, at 3. Once they identified themselves and explained their situation, plaintiffs were directed to the hospital's maternity ward. *Id.* at 4. Plaintiffs did not object to these instructions, nor did they request an examination by an attending ER physician. *Id.* at 3.

When López–Soto arrived at the maternity ward, she identified herself as a patient of

Dr. Hawayek. *Id.* at 4. Her husband proceeded to fill out the admission papers and presented her health insurance information.[1] Upon conducting a preliminary examination, the attending nurse immediately proceeded to call Dr. Hawayek and inform him of the status of her pelvic exam. It was already 1:00 a.m. on June 12, 1993. At the time, López–Soto was two centimeters dilated, which is exactly how dilated she had been when Dr. Hawayek examined her on the previous day. At no point did the nurse warn Dr. Hawayek that she believed López–Soto to be in labor.[2] Nevertheless, since it was so late at night, Dr. Hawayek instructed the nurse to admit López–Soto to the hospital under his services, run the usual laboratory exams, and call him back if anything happened. *Id.*, at Exhibit 2.

Dr. Hawayek arrived at the hospital at around 7:00 that morning. He immediately proceeded to examine López–Soto and found her four centimeters dilated. He thus determined that López–Soto had entered the early stages of labor. *Id.* By 11:00 a.m., however, since labor had failed to progress, Dr. Hawayek decided to submit López–Soto to a Cesarean section. At 1:30 p.m., an operating room was finally made available to plaintiff, and Dr. Hawayek proceeded with the cesarean. The rest is clearly depicted in this Court's opinion and order of December 31, 1997. *See López–Soto v. Hawayek*, 988 F.Supp. 41 (D.Puerto Rico 1997).

## Analysis

Plaintiffs would have us believe that all emergency medical conditions that arise at a

---

1. Plaintiffs request that we include, as an additional finding of fact, that their student health plans from the University of Puerto Rico did not cover medical treatment for plaintiffs' newborn at the Pediatric Hospital, and that plaintiffs had to request Medicaid assistance to cover such expenses. Although these facts have not been disputed, we hereby note that whether or not plaintiffs were indigent and had insurance coverage is irrelevant for purposes of EMTALA. In other words, once it is determined that EMTALA applies, it protects plaintiffs regardless of whether they have insurance or not. *See Correa v. Hospital San Francisco*, 69 F.3d 1184 (1st Cir. 1995).

2. Plaintiffs request that we find that López–Soto was in active labor when she arrived at the

hospital. In support of their contention, they submit the deposition of their expert witness, Dr. Lauren Lynch. Yet Dr. Lynch did not unequivocally hold that López–Soto was in labor when she arrived at the hospital. She merely stated, in response to plaintiffs' direct questioning, that "uhhh, retrospectively, given that she was four (4) centimeters at 7:00 or 8:00 a.m., and she was contracting, yes, she was in labor." Docket # 102, Exhibit 1. On the other side of the spectrum, however, we have bare, undisputed facts: López–Soto was two centimeters dilated when she arrived at the hospital; and four centimeters dilated when Dr. Hawayek examined her at 7:00 a.m. It is only at that point that Dr. Hawayek determined that she was entering the early stages of labor. The attending nurses did not determine otherwise.

hospital are covered by EMTALA, and that since an emergency medical condition did arise once plaintiffs' child was born, EMTALA should apply to the instant action. Plaintiffs further contend that the Congressional intent in enacting EMTALA would only be safeguarded if patients were to be protected even in those situations where the emergency arises once they're at the hospital. We disagree.

 As stated at the hearing held on July 30, 1998, it is difficult for the Court to attribute to Congress the intention to apply EMTALA to any emergency medical condition that arises at a hospital. Such an interpretation would virtually transform EMTALA into a federal malpractice statute, which is something that most courts have already held Congress did not intend to do. *See Correa*, 69 F.3d at 1192. Incidents such as the ones that gave rise to the instant action, unfortunate as they are, should remain the domain of state law.[3]

In the alternative, plaintiffs argue that even under the legal theory espoused by this Court, whereby only those who come to the hospital seeking emergency medical treatment are covered by the law, the instant case should fall under the Act's aegis. It is their contention that López–Soto actually came to the hospital seeking emergency medical treatment because she was in active labor. Again, we disagree.

We believe that the preceding additional findings of fact clearly demonstrate that plaintiffs did not come to the Auxilio Mutuo Hospital on the night of June 11, 1993 seeking emergency medical treatment. The hospital had been selected by plaintiffs and their physicians. Although they entered the hospital through the emergency room, they did so only because that was the only available entryway to the hospital at that hour. They were not examined by an attending physician at the Emergency Room, nor did they request an examination. Instead, they were referred to the maternity ward, where an attending nurse examined López–Soto and determined that she was not yet in labor.

Plaintiff's obstetrician, who had been on call all night, did not come to the hospital until 7:00 a.m. because he heard, at 1:00 a.m., that López–Soto had only dilated two centimeters. It was not until 1:30 p.m. that a Cesarean section was performed upon plaintiff.

Based on the foregoing, we believe that our judgment should remain unaltered, except for the addition of the previous facts.

**SO ORDERED.**

---

**3.** It is worth noting that Puerto Rico has a local version of EMTALA, which is remarkably similar to its Federal counterpart. *See* 24 L.P.R.A. §§ 3111–3117 (1997).